1  FAYER GIPSON LLP
   Gregory A. Fayer (State Bar. No. 232303)
2  GFayer@fayergipson.com
   Minh Z. Kuo (State Bar No. 287489)
3  MKuo@fayergipson.com
   2029 Century Park East, Suite 3535
4  Los Angeles, California 90067
   Telephone: 310.557.3550
5  Facsimile: 310.557.3559

6  Attorneys for Plaintiff
   Cinezeta Internationale
7  Filmproduktionsgesellschaft mbH
   & Co 1. Beteiligungs KG

8

9           UNITED STATES DISTRICT COURT

10    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

11

| 12  Cinezeta Internationale Filmproduktionsgesellschaft mbH & Co 1. Beteiligungs KG, | CASE NO. CV10-9938 JFW(FMOX) |
|---|---|
| 13 | **PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE SUBMITTED IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| 14             Plaintiff, | |
| 15        v. | |
| 16  Inferno Distribution, LLC; Inferno International, LLC; and DOES 1-10, inclusive, | |
| 17 | |
| 18             Defendants. | Judge: The Honorable John F. Walter |
| 19 | Date: October 17, 2011 |
| 20 | Time: 1:30 p.m. |
| 21 | Action Filed: December 27, 2010 |
| 22 | Pretrial Conf: November 18, 2011 |
| 23 | Trial Date: December 6, 2011 |

24

25

26

27

28

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

FAYER GIPSON LLP

Pursuant to Central District of California Local Rule 56-1 and the Court's Standing Order, Plaintiff Cinezeta Internationale Filmproduktionsgesellschaft mbH & Co 1. Beteiligungs KG ("Plaintiff") hereby submits these Objections to the Statement of Genuine Issues of Material Fact in opposition to Defendants' Motion for Summary Judgment, or, in the Alternative, Partial Summary Judgment:

Statement of Genuine Issues of Material Fact Paragraph 24: Objection to the declaration of James Seibel (hereinafter, "Seible Decl.") ¶13 at p. 4:6-8 which states "I believe that these representatives of Infitity took the labor in drafting the agreements utilizing their in-house lawyer" on the grounds that is stated without a foundation and lacks personal knowledge. Fed. R Evid. 602. To the extent it is based on personal knowledge, it is irrelevant since which sets of lawyers drafted the documents is not relevant to the document's meaning. Fed. R. Evid. 401. Objection to deposition testimony of Michael Ohoven (hereinafter "Ohoven Depo") at 54:10-55:4 which states:

> Q.  Okay.  So you believe -- you said before that you reviewed drafts of the PGA, the production guaranteed agreement?
>
> A.  Correct.
>
> Q.  Who else would have reviewed drafts?
>
> MR. SACKS:  If you know.
>
> THE WITNESS:  I mean --
>
> BY MR. FAYER:
>
> Q.  To your recollection at this point.
>
> A.  A lot of people, which includes probably pretty much everybody at Cinerenta, everybody at the trustee including their lawyers, everybody at the German law firm.  Everybody at the U.S. law side which would be

FAYER GIPSON LLP

1

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

1      in-house even that we had or I think in this case.  I

2      don't know if it was external but a lot of lawyers.

3         Q.   And when you say everybody, you don't

4      necessarily mean everybody but...

5         A.   A lot of people involved in the process,

6      because it was really a process between the lawyers and

7      trustees and various parties.

8  on the grounds that is stated without a foundation and lacks personal knowledge.  Fed.

9  R Evid. 602.   To the extent it is based on personal knowledge, it is irrelevant since

10  which sets of lawyers drafted the documents is not relevant to the document's

11  meaning. Fed. R. Evid. 401.

12     <u>Statement of Genuine Issues of Material Fact Paragraph 25</u>: Objection to the

13  Seibel Decl. at ¶20 which states "Distribution understood that Mr. Ohoven and Mr.

14  Vince were both affiliated with a company called Infinity, which it understood to be

15  agents or representatives of Cinezeta" on the grounds that is stated without a

16  foundation and lacks personal knowledge as it is unclear what the basis was for

17  Distribution's understanding that Mr. Ohoven represented Cinterenta.  Fed. R Evid.

18  602.   To the extent it is based on personal knowledge, it is irrelevant since whether

19  Mr. Ohoven represented Cinterenta is not relevant to the contract's meaning and

20  whether the contract was breached. Fed. R. Evid. 401.   Objection to the Deposition

21  testimony of Andrew Mann ("Mann Depo") at 92:2-5 which states:

22        Q.   Who -- who -- who else in the past form

23      of Cinerenta, who did you deal with?

24        A.   Michael Ohoven was a representative of

25      Cinerenta, Marco Mehlitz, you know, Mr. Ingels.

26  on the grounds that is stated without a foundation and lacks personal knowledge.  Fed.

27  R Evid. 602.

28

FAYER GIPSON LLP

2

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

1   <u>Statement of Genuine Issues of Material Fact Paragraph 26</u>: Objection to the

2   Seibel Decl. Seibel ¶12 at which states "Neither I nor anyone else at Distribution took

3   the labor in drafting these agreements.  I, however, was involved in the negotiation of

4   the GAreements.  I am not an attorney or a college graduate. Distribution did not have

5   an attorney representing Distribution with respect to the negotiation or drafting of the

6   Agreements.  This was the first time that Distribution had ever entered into a

7   production guarantee agreement with a Cinerenta-affiliated entity or any entity for that

8   matter."   It is irrelevant whether Distribution Distribution's lawyers drafted the

9   documents or whether Distribution was represented by counsel; the identity of the

10   drafter is not relevant to the document's meaning or whether it was breached. Fed. R.

11   Evid. 401; *see also* Cal. Civ. Code § 1636 (when the contract is in writing "the

12   intention… is to be ascertained from the writing alone, if possible.").

13   <u>Statement of Genuine Issues of Material Fact Paragraph 27</u>:  Objection to

14   Paragraph 27 itself which states "Seibel, a non-lawyer, signed the agreements on

15   behalf of Distribution" as this statement is argumentative in violation of this Court's

16   Scheduling Order.  Moreover, Plaintiff further objects to the statement that in Seibel

17   Decl. ¶12 at p. 3:24-25 which states, "I am not a lawyer" on the grounds that it is

18   irrelevant whether Mr. Seibel is an attorney as this has no bearing on whether

19   Defendants' breached the contract or any other issue in this case. Fed. R. Evid. 401;

20   *see also* Cal. Civ. Code § 1636 (when the contract is in writing "the intention… is to

21   be ascertained from the writing alone, if possible.").

22   <u>Statement of Genuine Issues of Material Fact Paragraph 32</u>:  Objection to the

23   entirety of Seibel Decl. at ¶¶14-16 which state:

24       14.    Around the time the SAA was negotiated and executed, I learned that

25       the trustee for Cinezeta (or Cinerenta) required that Cinezeta have a certain

26       guarantee structure in place for the Picture. It was my understanding that the

27       trustee was responsible for making sure Cinezeta (Cinerenta) met all of the

28

FAYER GIPSON LLP

3

FAYER GIPSON LLP

1  conditions required by the Gennan investors before production funds would be

2  released. Based on my communications with Cinezeta's representatives, I

3  understood that letters from Wolrige Mahon Chartered Accountants and the

4  Saskatchewan government confirming the amount of tax credits (the "Tax

5  Credit Letters") were verifiably "bankable" documents and, thus, reduced any

6  liability that Distribution had under the Guaranty provision of the PGA by $3.6

7  million. I understood that Cinezeta chose to take direct assignment of the tax

8  credits instead of allowing Distribution to bank the tax credits and providing the

9  proceeds of the loan to Cinezeta. Based on these Tax Credit Letters, the

10 language in the PGA, and an assignment agreement between Mooseface Films,

11 Inc. ("MF") and Just Friend Productions ("JFP" and collectively, the "Service

12 Providers"), and my communications with Infinity and Cinerenta/Cinezeta, I

13 understood that Distribution's liability under the PGA could not be more than

14 $4,094, I 00 ($7,694, I 00 less $3,600,000 of tax credits). A true and correct

15 copy of the Assignment and the Tax Credit Letters are attached hereto as

16 Exhibits II and 12, respectively.

17 15.    A true and correct copy of correspondence from Marco Mehlitz of

18 Cinerenta to various individuals at Infinity, individuals at Cinerenta (including

19 Dr. Till Neumann and Bernhard Speck), and me dated September 28, 2004

20 regarding the trustee's requirements is attached hereto as Exhibit 13. Mr.

21 Mehlitz's correspondence to me confirmed that Cinezeta required Distribut ion

22 to be responsible for satisfying a guarantee of no more than $4,094,100, which

23 is evident because he and the trustee did not want Distribution responsible for

24 the tax credit tranche at all. Distribution was not even a party to the assignment

25 of the tax credits.

26

27 16.    It was never Distribution's intention, nor was it my understanding, that

28

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

the parties intended for Distribution to "insure" the $3.6 million or so paid by the Canadian government in tax credits in the event there was a dispute between Cinezeta and the production service providers, that they both hired and designated as the recipients of the tax credits. For instance, in signing the PGA, I understood that Distribution could not liable for any losses incurred by Cinezeta that resulted from liabilities Cinezeta assumed. I relied on this provision as Cinezeta was entering into it's own agreements without Distribution's involvement. Distribution never agreed to pay Cinezeta money from the Canadian tax credits that was supposed to be payable to Cinezeta but allegedly was stolen by another party, particularly one selected by Cinezeta and under Cinezeta's direction and control. Distribution would not have agreed to such since it had no control over the issuance or receipt of the tax credits, or the production service providers. Moreover, in signing the PGA it was essential that Cinezeta be the sole beneficiary of the tax credits and that the tax credits be payable directly to Cinezeta. In fact, Cinezeta insisted that the tax credits be payable directly to Cinezeta instead of the Picture's collection account.  Seibel Decl. ¶¶14-16 at pp. 4:11-5:26.

Plaintiff objects to the cited testimony on the grounds that Distribution's understanding of its guarantee obligations is stated without foundation and therefore lack personal knowledge.  Fed. R Evid. 602.   Mr. Seibel simply gives no basis for his understanding that Distribution would not be liable for a shortfall stemming from problems with the tax credits.  The statements also state a legal conclusion on the basis of contractual interpretation, and as such is impermissible opinion testimony. Fed. R. Evid. 701.  A legal conclusion is not a fact; the appropriate place for such a statement would be under the Conclusions of Law Section.  To the extent it purports to state what the contract states, it is also hearsay for which there is no exception. Fed. R. Evid. 802.  Plaintiff further objects that Defendant Distribution's

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

1   uncommunicated understanding of what the contract might mean is completely

2   irrelevant as a matter of law.  Fed. R. Evid. 401; *see also* Cal. Civ. Code § 1636 (when

3   the contract is in writing "the intention… is to be ascertained from the writing alone, if

4   possible."). Plaintiff further objects to the Paragraph 32 itself which states, "Around

5   the time that the PGA was negotiated and signed, Distribution understood that its

6   guarantee obligations would be, at the very most, the $7,694,100 <u>minus</u> the

7   $3,600,000 from the tax credits assignment" as this statement is argumentative in

8   violation of the Court's Scheduling Order.  Case Scheduling Order (Docket Inst. No.

9   26 at p. 10).

10       <u>Statement of Genuine Issues of Material Fact Paragraph 39</u>:  Objection to the

11   statement paragraph 39 which states, "Distribution was not a party to the PSA or the

12   Assignment" on the grounds or relevance as this does not tend prove or disprove

13   whether the contract at issue in this litigation was breached.  Fed. R. Evid. 401.

14       <u>Statement of Genuine Issues of Material Fact Paragraph 43</u>: Objection to Seibel

15   Decl. at ¶19 which states "Distribution never received a copy of, nor was made party

16   to, a Completion Guaranty" on the grounds or relevance as this does not tend prove or

17   disprove whether the contract at issue in this litigation was breached.  Fed. R. Evid.

18   401.

19       <u>Statement of Genuine Issues of Material Fact Paragraph 48</u>:  Objection to

20   Paragraph 48 as stated, which states, "Distribution has not received all of the elements

21   of delivery set forth in Schedule A of the SAA" on the grounds that whether delivery

22   occurred is a legal conclusion and the appropriate place for such a statement would be

23   under the Conclusions of Law Section. Moreover, Plaintiff further objects that this

24   same statement is argumentative as it infers that "delivery" has not been made (which

25   is a separate question from whether all elements listed in a contract were delivered).

26       <u>Statement of Genuine Issues of Material Fact Paragraph 66</u>: Objection to

27   Change Delc. At Ex. 34 (L. Vince Affidavit at Ex. J) on the grounds that Cavern's

28

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

FAYER GIPSON LLP

1    general ledger is irrelevant to whether the contract at issue was breached or any other

2    issue. Fed. R. Evid. 401.

3        Statement of Genuine Issues of Material Fact Paragraph 67: Objection to Chang

4    Decl. at Ex. 31 (Florian Affidavit) on the grounds that any monies that JFP received is

5    irrelevant to whether the contract at issue was breached or any other issue.  Fed. R.

6    Evid. 401.

7        Statement of Genuine Issues of Material Fact Paragraph 68: Objection to Chang

8    Decl. at Ex. 35, Chang Decl. at Ex. 31(Florian Affidavit at Ex. F), and Chang Decl. at

9    Ex. 36, Response #1, on the grounds that the settlement agreement between Cinezeta,

10   JFP and MF is irrelevant to whether the contract at issue was breached or any other

11   issue. Fed. R. Evid. 401.

12       Statement of Genuine Issues of Material Fact Paragraph 69: Objection to Chang

13   Decl. at Ex. 35, Chang Decl. at Ex. 31(Florian Affidavit at Ex. F) and Chang Decl. at

14   Ex. 36, Response #1, on the grounds that the settlement agreement between Cinezeta,

15   JFP and MF is irrelevant to whether the contract at issue was breached or any other

16   issue.  Fed. R. Evid. 401.

17       Statement of Genuine Issues of Material Fact Paragraph 70:  Objection to

18   Seibel Decl. at ¶60 which states "During the course of this litigation, I also learned for

19   the first time that a complex series of transaction (sic) took place later resulting in a

20   dispute between Cinezeta and Service Providers…" on the basis that Distribution's

21   "knowledge" of disputes and a settlement agreement between Cinezeta, JFP and MF is

22   irrelevant as to whether the contract at issue in this case was breached (or any other

23   issue for that matter).  Fed. R. Evid. 401.  Plaintiff also objects to this whole

24   paragraph on the basis of lack of foundation, lack of personal knowledge, and hearsay

25   as it is completely unclear how Mr. Seibel knows anything of which he is purporting

26   to testify except through "the course of litigation."  Fed. R. Evid. 602, 802.

27

28

FAYER GIPSON LLP

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAYER GIPSON LLP

Statement of Genuine Issues of Material Fact Paragraph 93:  Objection to Seibel Decl. ¶34 at p. 11:13-16 which states "On July 5, 2006, Distribution entered into a Credit, Security, and Pledge Agreement with D.B. Zwirn ("Zwirn"), a hedge fund which provded up to $65 million of debt financing for film productions meeting certain criteria (the "Credit Facility")" on the grounds of hearsay.  Fed. R. Evid. 802. The alleged written agreement speaks for itself – but it has not been submitted with Defendants' Motion. Moreover, Plaintiff objects to the same statement on the basis of relevance as the alleged Zwirn credit facility has no tendency to prove or disprove whether Distribution breached the contract or International is Distribution's alter ego. Fed. R. Evid. 401.

Statement of Genuine Issues of Material Fact Paragraph 94:  Objection to Seibel Decl. ¶34 at p.11:16-17 which states "As part of that Agreement, Zwirn was granted a primary lien over all of Distribution's assets ("Zwirn Lien")" on the grounds of hearsay.  Fed. R. Evid. 802.  The alleged written agreement speaks for itself – but it has not been submitted with Defendants' Motion. Moreover, Plaintiff objects to the same statement on the basis of relevance as the alleged Zwirn credit facility has no tendency to prove or disprove whether Distribution breached the contract or International is Distribution's alter ego.  Fed. R. Evid. 401.

Statement of Genuine Issues of Material Fact Paragraph 95:  Objection to Seibel Decl. ¶34 at p. 11:17-18 which states "Under the Credit Facility, Distribution was able to produce approximately five films" on the basis of relevance as the alleged Zwirn credit facility has no tendency to prove or disprove whether Distribution breached the contract or International is Distribution's alter ego.  Fed. R. Evid. 401.

Statement of Genuine Issues of Material Fact Paragraph 96:  Objection to Seibel Decl. ¶35 at p. 11:19-21 which states, "In February 2008, Distribution became aware of rumors of a global meltdown in the credit markets indicating the Zwirn hedge fund would collapse, thereby freezing up all credit and tying up all pledged

collateral.  Plaintiff objects to these statements on the grounds of lack of foundation – lack of personal knowledge.  Fed. R. Evid. 602.  These statements are made in conclusory fashion without any foundation for how Mr. Seibel came to know what he is testifying about.  Plaintiff further objects on the grounds of hearsay as "rumors of a global meltdown" and Zwirn's alleged notification that it must stop lending are not exceptions to the hearsay rule. Finally, Plaintiff objects to these statements on the basis of relevance as the alleged Zwirn credit facility and its subsequent meltdown do not tend to prove or disprove whether Distribution breached the contract or International is Distribution's alter ego.  Fed. R. Evid. 401.

Statement of Genuine Issues of Material Fact Paragraph 97:  Objection to Seibel Decl. at ¶34 which states "Soon thereafter on or about March 28, 2008, Zwirn notified Distribution that it must cease all lending opportunities under the Credit Facility" on the grounds of hearsay.  Fed. R. Evid. 802.  Zwirn's alleged notification that it must stop lending are not exceptions to the hearsay rule. Moreover, Plaintiff objects to the same statement on the basis of relevance as the alleged meltdown of the Zwirn credit facility does not tend to prove or disprove whether Distribution breached the contract or International is Distribution's alter ego.  Fed. R. Evid. 401.

Statement of Genuine Issues of Material Fact Paragraph 101: Objection to Seibel Decl. at ¶37 which states "Distribution has satisfied its obligations under the Credit Facility" on the grounds that this statement is a legal conclusion and as such is impermissible opinion lay testimony.  Fed. R. Evid. 701.  Objection to the same statement on the grounds that there is a lack of foundation and lack of personal knowledge as declarant gives no basis for his assertion that Distribution has satisfied its obligations.  Fed. R. Evid. 602.   Plaintiff further objects that this testimony is not relevant to whether Distribution breached the contracted or International is Distribution's alter ego.  Fed. R. Evid. 401.

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAYER GIPSON LLP

Statement of Genuine Issues of Material Fact Paragraph 103: Objection that the Statement of Facts itself in paragraph 103 is argumentative and a legal conclusion in that it states "International and Distribution are two separate legal entities."  The appropriate place for such a statement is not here but would be under the Conclusions of Law Section.

Statement of Genuine Issues of Material Fact Paragraph 103: Objection that the Statement of Facts itself in paragraph 103 is argumentative and a legal conclusion in that it states "International was not formed at the time the Agreements were executed."  The appropriate place for such a statement is not here but would be under the Conclusions of Law Section.

Statement of Genuine Issues of Material Fact Paragraph 108:  Objection to Seibel Decl. at ¶38 which states that "In April 2008, Mr. Johnson, Mr. Mann, James MacLean, and I formed International to start new projects" on the grounds of lack of personal knowledge.  Fed. R. Evid. 602.  Regardless of Mr. Seibel's intent, he cannot have personal knowledge of the intent of Mr. Johnson, Mr. Mann and Mr. MacLean.

Statement of Genuine Issues of Material Fact Paragraph 109:  Objection to Seibel Decl. at ¶38 which states that "I did not start International to avoid paying Distribution's creditors or outstanding debts, to the extent it had any, and it is my understanding this was not Mr. Johnson's intent either" on the grounds of lack of personal knowledge.  Fed. R. Evid. 602.  Regardless of Mr. Seibel's intent, he cannot have personal knowledge of the intent of Mr. Johnson's intent.  To the extent he could, there is no foundation for it in this statement.  Fed. R. Evid. 602.

Statement of Genuine Issues of Material Fact Paragraph 110:  Objection to the paragraph 110 itself on the grounds that the statement "The decision to start International had nothing to do with Cinezeta's lawsuit or the Sales Guarantee" is argumentative. Case Scheduling Order (Docket Inst. No. 26 at p. 10).  Objection to the

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

FAYER GIPSON LLP

1   paragraph 110 itself on the grounds that the same statement is not supported by the

2   cited text.  Seibel Decl. at ¶38.

3       Statement of Genuine Issues of Material Fact Paragraph 111:  Objection to the

4   paragraph 111 itself on the grounds that the statement "In fact, at the time

5   International was formed, Distribution did not think it owed Cinezeta any money" is

6   argumentative. Case Scheduling Order (Docket Inst. No. 26 at p. 10).

7       Statement of Genuine Issues of Material Fact Paragraph 120:  Objection to the

8   paragraph 120 itself as the statement "Each of Distribution's films as its own

9   designated collection account with a third party collection agent" is not supported by

10  the cited statement which states "*Generally*, the minimum guarantee payments that a

11  sub-distributor makes in exchange for the rights in a film that Distribution sells are

12  sent to a collection account specifically designated for one particular film." Seibel

13  Decl. at ¶7 (emphasis added).

14      Statement of Genuine Issues of Material Fact Paragraph 121: Objection to the

15  paragraph 121 itself as the statement "Money is disbursed from the collection account

16  for a Distribution title, such as the Picture, is directed to Distribution's account" is not

17  supported by the cite to Seibel Decl. at ¶¶6-7.  Seibel Decl. at ¶6 does not discuss the

18  issue of money disbursement at all.  Although ¶7 discusses distribution of monies, it

19  does not state that "for a Distribution title, such as the Picture, [money] is directed to

20  Distribution's account."  Rather it states, "As manager of the collection account,

21  Fintage then directs any revenue it receives from such a collection account to the

22  *appropriate parties* (sic) designated bank.  Distribution's entitlements are received by

23  Fintage to its own bank account with Citibank (and previously to its prior bank, City

24  National Bank)."  Seibel Decl. at ¶ 7 (emphasis added).

25      Statement of Genuine Issues of Material Fact Paragraph 122:  Objection to

26  paragraph 122 itself as the statement "Distribution does not transfer any significant

27  amounts of money to International without receiving consideration" is argumentative.

28

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

1  Case Scheduling Order (Docket Inst. No. 26 at p. 10) (the statement of genuine issues

2  should not contain argumentative statements).  Further, Plaintiff objects to Seibel

3  Decl. at ¶ 48 which states "Distribution has never transferred any significant amount

4  of money (if at all) to International, and if it did, it would have received valuable

5  consideration in return on the basis of lack of personal knowledge as Mr. Seibel first

6  denies that a transfer took place and the speculates as to hypothetical arrangements

7  between Distribution and International regarding such a hypothetical transfer.  Fed. R.

8  Evid. 602.

9        Statement of Genuine Issues of Material Fact Paragraph 123:  Objection to

10  Seibel Decl. at ¶48 which states "The companies have each made intercompany loans

11  to each other, but the loans are due on a certain date with interest" on the grounds of

12  lack of foundation and lack of personal knowledge.  Fed. R. Evid. 602.  To the extent

13  such loans were executed as documents, Plaintiff further objects to this same

14  statement on the grounds of hearsay.  Fed. R. Evid. 802.  The alleged written

15  agreement speaks for itself – but it has not been submitted with Defendants' Motion.

16        Statement of Genuine Issues of Material Fact Paragraph 124:  Objection to

17  Seibel Decl. at ¶48 which states that "Distribution never has assigned, gifted, sold, or

18  transferred any of its rights in the Picture (or in any of its titles) to International or any

19  other entity for that matter" on the basis of lack of foundation --  lack of personal

20  knowledge. Fed. R. Evid. 602.   Plaintiff further objects to this same statement has

21  whether rights have been "assigned, gifted, sold, or transferred" is a legal conclusion.

22  The appropriate place for such a statement is not here and would be under the

23  Conclusions of Law Section.  To the extent Mr. Seibel's statements are based on

24  documents, in addition to lack of knowledge, Plaintiff further objects on grounds of

25  hearsay. Fed. R. Evid. 802.

26        Statement of Genuine Issues of Material Fact Paragraph 125:  Objection to

27  Seibel Decl. at ¶52 which states "Distribution and International each files their own

28

FAYER GIPSON LLP

12

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

separate tax returns and each has a separate taxpayer ID number" on the basis of lack of foundation – lack of personal knowledge as the declaration fails to show the basis for Mr. Seibel's statements.  Fed. R. Evid. 602.  Athough Mr. Seibel does give a brief one sentence overview of his general duties at Distibution at ¶5 (which, on their face, do not encompass overseeing tax returns),  nowhere in his entire declaration does Mr. Seibel offer an even cursory explanation of his duties, if any, as managing member of International.  *See generally*, Seibel Decl. To the extent Mr. Seibel's understanding is based on documents, Plaintiff further objects on the grounds of hearsay.  Fed. R. Evid. 802.  The alleged tax returns and taxpayer ID numbers speak for themselves– but they have not been submitted with Defendants' Motion.

Statement of Genuine Issues of Material Fact Paragraph 126: Objection to Seibel Decl. at ¶53 which states that "International has several employees that are not employees of Distribution.  For instance, D.J. Guggenheim, Gary Preisler, Orrin Haper, and Kimberly Fox are not employees for Distribution but are employees of International" on the grounds of lack of foundation – lack of personal knowledge as the statement fails to provide the basis for Mr. Seibel's assertions.  Fed. R. Evid. 602. Nowhere in his entire declaration does Mr. Seibel offer an even cursory explanation of his duties, if any, as managing member of International which would provide for a basis of how he knows who International's employees are.  *See generally*, Seibel Decl. Plaintiff further objects that whether the stated individuals are employees only of International and not Distribution is a legal conclusion, and as such is impressible lay testimony.   Fed. R. Evid. 802.  As such, the appropriate place for such a statement would be under the Conclusions of Law Section.  Finally, to the extent Mr. Seibel's understanding is based upon documents, Plaintiff objects on the basis of hearsay. Fed. R. Evid. 802.

Statement of Genuine Issues of Material Fact Paragraph 143: Objection to Seibel Decl. ¶ 16 at p. 5:11-18  which states:

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FAYER GIPSON LLP

> It was never Distribution's intention, nor was it my understanding, that the parties intended for Distribution to 'insure' the $3.6 million or so paid by the Canadian government in tax credits in the event that there was a dispute between Cinezeta and the production service providers, that they both hired and designated as the recipients of the tax credits.  For instance, in signing the PGA, I understood that Distribution could not be liable for any losses incurred by Cinezeta that resulted from liabilities Cinezeta assumed.  I relied on this provision as Cinezeta was entering into its own agreements without Distribution's involvement.

Plaintiff objects to this statement on the grounds that this statement lacks foundation and is outside of Mr. Seibel's personal knowledge in that there is no basis in his declaration that explains how he came to his understanding.   Fed. R. Evid. 602. To the extent Mr. Seibel's understanding is based upon documents (and in particular the contract at issue in this litigation), Plaintiff objects on the basis of hearsay. Fed. R. Evid. 802.  The document speaks for itself.  Plaintiff further objects on the basis of relevance as Distribution's or Mr. Seibel's understanding which is not communicated to the other contracting parties is irrelevant to the contract's meaning.  *See* Fed. R. Evid. 401.; *see also* Cal. Civ. Code § 1636 (when the contract is in writing "the intention… is to be ascertained from the writing alone, if possible.").

> Plaintiff further objects to the Seibel Decl. ¶16at p. 5:18-21 which states, "Distribution never agreed to pay Cinezeta money from the Canadian tax credits that was supposed to be payable to Cinezeta but allegedly was stolen by another party, particularly one selected by Cinezeta and under Cinezeta's direction and control."

Plaintiff objects to this statement on the grounds of lack of foundation – lack of personal knowledge.  Fed. R. Evid. 602.  There is no explanation which serves as his basis for stating what Distribution agreed or didn't agree to.  Moreover, to the extent

14

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

Mr. Seibel's understanding is based upon documents (and in particular the contract at issue in this litigation), Plaintiff objects on the basis of hearsay. Fed. R. Evid. 802. The document speaks for itself.  Further, Mr. Seibel's statement itself about was agreed to or not agreed to is a legal conclusion and as such is impermissible opinion testimony.  Fed. R. Evid. 701. To the extent this statement is regarding Distribution's intent, Plaintiff further objects on the basis of relevance as Distribution's or Mr. Seibel's understanding or intent which is not communicated to the other contracting parties is irrelevant to the contract's meaning.  *See* Fed. R. Evid. 401.; *see also* Cal. Civ. Code § 1636 (when the contract is in writing "the intention… is to be ascertained from the writing alone, if possible.").

Plaintiff further objects to Seibel Decl. ¶16 at p. 5:21-23, which states "Distribution would not have agreed to such since it had no control over the issuance or receipt of the tax credits, or the production service providers" on the basis that this is a speculative statement regarding a counterfactual (what Distribution would or would not have done) and therefore is outside of Mr. Seibel's personal knowledge. Fed. R. Evid. 602.  In this regard, it is also impermissible opinion testimony without and adequate foundation.  Fed. R. Evid. 701. To the extent this statement is regarding Distribution's intent, Plaintiff further objects on the basis of relevance as Distribution's or Mr. Seibel's understanding or intent which is not communicated to the other contracting parties is irrelevant to the contract's meaning.  *See* Fed. R. Evid. 401.; *see also* Cal. Civ. Code § 1636 (when the contract is in writing "the intention… is to be ascertained from the writing alone, if possible.").

Plaintiff further objects to Seibel Decl. ¶16 at p. 5:23-26 which states: "Moreover, in signing the PGA it was essential that Cinezeta be the sole beneficiary of the tax credits and that the tax credits be payable directly to Cinezeta.  In fact, Cinezeta insisted that the tax credits be payable directly to Cinezeta instead of the Picture's collection account."

15

Plaintiff objects to these statements on the basis that they are outside of Mr. Seibel's personal knowledge as he cannot know what was or was not essential to Cinezeta.  To the extent Mr. Seibel is relying upon statements from Cinezeta or documents, Plaintiff further objects on the basis of hearsay.  Fed. R. Evid. 802.  To the extent Mr. Seibel is speculating about what was essential or not essential to Cinezeta, Plaintiff further objects on the basis that this is impermissible opinion testimony without a foundation. Fed. R. Evid. 701.

Statement of Genuine Issues of Material Fact Paragraph 145: Objection to Paragraph 143 itself as the statement "The PGA, however, contains no representations, warranties, or covenants that Distribution will pay the Sales Guarantee by the Payment Date" is a legal conclusion based upon contract interpretation; the appropriate place for such a statement would be under the Conclusions of Law Section.

Statement of Genuine Issues of Material Fact Paragraph 146:  Objection to Paragraph 146 itself as it states "Moreover, nothing in the PGA suggests that a failure to satisfy the Sales Guarantee by January 10, 2008 constitutes a breach of the PGA.  In fact, failure to satisfy the Sales Guarantee by January 10, 2008 is not listed as an Event of Default" is argumentative. Case Scheduling Order (Docket Inst. No. 26 at p. 10) (the statement of genuine issues should not contain argumentative statements). The document's language speaks for itself and the relevant portions can be summarized without argumentation.

Statement of Genuine Issues of Material Fact Paragraph 149:  Objection to Paragraph 149 itself as it states "Notably, the PGA never says that, in the event that the Sales Guarantee is not paid by the Payment Date, Cinezeta has the option to collect immediately the entirety of the guarantee" is argumentative. Case Scheduling Order (Docket Inst. No. 26 at p. 10) (the statement of genuine issues should not

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

FAYER GIPSON LLP

contain argumentative statements).  The document's language speaks for itself and the relevant portions can be summarized without argumentation.

Statement of Genuine Issues of Material Fact Paragraph 157:  Objection to Seibel Decl. ¶ 22 at p. 7:14-16 which states "By November 5, 2005, Distribution still had not received all of the elements listed in Schedule A of the SAA ("Delivery").  In fact, by January 2006, Distribution still had not received Delivery" on the basis that interpreting whether "delivery" had incurred is a question of contract interpretation which necessarily implies a legal conclusion.  As such this is impermissible lay testimony without an adequate foundation.  Fed. R. Evid. 701. To the extent Mr. Seibel is asserting a legal conclusion, the appropriate place for such a statement would be under the Conclusions of Law Section.

Statement of Genuine Issues of Material Fact Paragraph 158:  Objection to the Seibel Decl. ¶24 at p. 8:16-19  which states, "While Distribution has been able to sell the Picture to sub-distributors of the Picture, Distribution's ability to do so was hindered by its delivery problems which resulted in professional setbacks for Distribution in the industry" on the basis that this statement lacks foundation and personal knowledge as it is unclear what "professional setbacks" the declarant is speaking of.  Fed. Evid. R. 602.  Plaintiff further objects that this statement is irrelevant as it does not tend to either prove or disprove the breach of contract or other claims at issue in this case.  Fed. R. Evid. 401.  To the extent this statement may be relevant, Plaintiff further objects that this statement's undue prejudice and confusion outweighs its probative value.  Fed. R. Evid. 403.

Plaintiff further objects to Seibel Decl. ¶24 at p.8:19-9:2 which states: Moreover, Distribution anticipates more problems in the future when the Picture is on its second-cycle.  Second cycle is when the term of  film's first sublicense agreement expires and will be relicensed to sub to sub-distributors for additional revenue under new terms.  Because sub-distributors's (sic)

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

FAYER GIPSON LLP

oftenrequire that Distribution have all of the elements set forth in Schedule A prior to signing a license agreement, particularly more so now than ever since many of the new distribution platforms require more than the basic elements, Distribution anticipates that many sub-distributors will not license the Picture absent receipt of all the elements in Schedule A.  With the advent of Netflix and other digital distribution platforms, clearance and contracts are equally as important as 35 mm printing elements.

Plaintiff objects to this entire paragraph on the basis that is speculative, lacks foundation, and lacks personal knowledge as Mr. Seibel is testifying about hypothetical problems of film sales in "second-cycle" distribution.  Fed. R. Evid. 602. Plaintiff further objects that this is impermissible lay opinion testimony without adequate foundation.  Fed. R. Evid. 701.  To the extent this statement purports to be expert testimony, Plaintiff objects that the witness has not been qualified or designated as an expert.  Fed. R. Evid 702.  To the extent this statement purports to be expert testimony, Plaintiff objects that the witness had not disclosed the documents or information on which he has based his opinion.  Fed. R. Evid. 705.

Statement of Genuine Issues of Material Fact Paragraph 159:  Objection to the statement of paragraph 159 itself that states "The revenue that Distribution receives from the sales contracts it has in its own films (such as the Picture) go directly to Distribution's bank account" on the grounds that the cited declaration does not support the statement.  See Seibel Decl. ¶¶7-8, 50.  Paragraphs 8 states in relevant parts that sometimes money goes to a collection account, and sometimes to Distribution's own bank account:

- "Sometimes Distribution directly receives minimum guarantee payments from a sub-distributor, in which case, Distribution generally will direct the payment to the collection account designated for the film that was sub-licensed.".  Seibel Decl. ¶8 at p. 2:22-24.

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

- "In cases where Distribution keeps payments from sub-distrbutors it directs them to its own bank account, no o any other company's bank account."  Seibel Decl ¶8 at p. 3:1-3.

Statement of Genuine Issues of Material Fact Paragraph 163:  Objection to Seibel Decl. ¶48 at p. 14:7-8 which states "The companies have each made intercompany loans to each other, but the loans are due on a certain date with interest" on the grounds of lack of foundation and lack of personal knowledge.  Fed. R. Evid. 602.  Athough Mr. Seibel does give a brief one sentence overview of his general duties at Distibution at ¶5 (which, on their face, do not encompass overseeing company loans),  nowhere in his entire declaration does Mr. Seibel offer an even cursory explanation of his duties, if any, as managing member of International.  *See generally*, Seibel Decl.   It is not clear how Mr. Seibel knows what he purports to know about such inter-company loans.  To the extent such loans were executed as documents, and Mr. Seibel's understanding is based on those documents, Plaintiff further objects to this same statement on the grounds of hearsay.  Fed. R. Evid. 802.  The alleged written agreement speaks for itself – but it has not been submitted with Defendants' Motion.

Statement of Genuine Issues of Material Fact Paragraph 164:  Objection to Paragraph 164 itself which states that "In addition, while the two entities have common owners, Seibel and Johnson, International has had other shareholders that were not shareholders of Distribution – MacLean and Mann" on the basis that this statement is not supported by Defendants' citation to Seibel Decl. ¶48 which has to do with loans between Distribution and Inferno.  Seibel Decl. ¶48 at p. 14:5-10.   In addition, Plaintiff objects that this statement is argumentative in violation of the Court's Scheduling Order. Case Scheduling Order (Docket Inst. No. 26 at p. 10) (the statement of genuine issues should not contain argumentative statements).

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

FAYER GIPSON LLP

FAYER GIPSON LLP

1   <u>Statement of Genuine Issues of Material Fact Paragraph 165</u>:  Objection to

2   Paragraph 165 itself which states "Also, many of International's employees are not

3   employees of Distribution" on the basis that this statement is not supported by

4   Defendants' citation to Seibel Decl. ¶¶38 and 43.  Paragraph 38 has to do with the

5   formation of International; paragraph 43 has to do with International's operating

6   agreement.  Seibel Decl. ¶¶38 and 43.

7   <u>Statement of Genuine Issues of Material Fact Paragraph 166</u>:  Objection to

8   Seibel Decl. ¶49 at p. 14:11 which states "Both Distribution and International are

9   adequately capitalized" on the basis of lack of foundation – lack of personal

10   knowledge.  Fed. R. Evid. 602.  There is absolutely no basis for the declarant's

11   assertion anywhere in the declaration – it is simply a conclusory statement.  To the

12   extent this is a lay opinion, Plaintiff further objects that this is impermissible lay

13   opinion without foundation.  To the extent Mr. Seibel's statement is based upon

14   documents, Plaintiff objects to it as hearsay.  To the extent Mr. Seibel's statement

15   purports to be expert opinon, Plaintiff objects that Mr. Seibel is not qualified as an

16   expert and has not shared the documents or information that allowed him to form the

17   basis of his opinion.  Fed. R. Evid. 702, 705.

18   <u>Statement of Genuine Issues of Material Fact Paragraph 167</u>:  Plaintiff objects

19   to Seibel Decl. ¶49 at p. 14:11-13 which states, "Each company continues to maintain

20   assets and rights in films from which each derive revenue to operate and enter into

21   new contracts" on the basis that it lacks foundation – lacks personal knowledge.  Fed.

22   R. Evid. 602.   Mr. Seibel does not explain how he knows such alleged facts – he

23   simply states them.  Athough Mr. Seibel does give a brief one sentence overview of

24   his general duties at Distibution at ¶5,  nowhere in his entire declaration does Mr.

25   Seibel offer an even cursory explanation of his duties, if any, as managing member of

26   International.  *See generally*, Seibel Decl.  To the extent Mr. Seibel's understanding is

27   based upon documents, Plaintiff objects on the basis of hearsay.  Fed. R. Evid. 802.

28

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

FAYER GIPSON LLP

Statement of Genuine Issues of Material Fact Paragraph 170:  Plaintiff objects to Seibel Decl. ¶38 which states which states:

In April 2008, Mr. Johnson, Mr. Mann, James MacLean, and I formed International to start new projects. I did not start International to avoid paying Distribution's creditors or outstanding debts, to the extent it had any, and it is my understanding this was not Mr. Johnson's intent either. "

Plaintiff objects on the grounds of lack of foundation – lack of personal knowledge. Fed. R. Evid. 602.  First, there is no basis in the statement for how Mr. Seibel formed or communicated his intent.  Second, regardless of Mr. Seibel's intent, he cannot have personal knowledge of the intent of Mr. Johnson, Mr. Mann and Mr. MacLean.  To the extent such knowledge of his associates is based upon the statements of Mr. Johnson, Mr. Mann, and Mr. MacLean, Plaintiff objects on the basis of hearsay.  Fed. R. Evid. 802.  Plaintiff further objects to Paragraph 170 itself as the statement "International was created because Distribution could not obtain financing for new projects" is argumentative in violation of this Court's Scheduling Order. Case Scheduling Order (Docket Inst. No. 26 at p. 10).

Statement of Genuine Issues of Material Fact Paragraph 171:  Plaintiff objects to Paragraph 171 itself as its statement that "The decision to start International had nothing to do with any purported debt it owed to Cinezeta, or any other entity or person for that matter" is argumentative in violation of this Court's Scheduling Order. Case Scheduling Order (Docket Inst. No. 26 at p. 10).  Plaintiff further objects as the cited paragraph does not correspond to this statement.  Seibel Decl. ¶38.  It is Seibel paragraph 39 that contains the statement, "The decision to start International had nothing to do with Cinezeta's lawsuit or Sales Gurantee."  Plaintiff objects to that statement on the basis of lack of foundation – lack of personal knowledge.  Fed. R. Evid. 602.  Mr. Seibel does not provide any basis for this statement in his declaration – it's simply a conclusory assertion without any foundation.

FAYER GIPSON LLP

1    <u>Statement of Genuine Issues of Material Fact Paragraph 178</u>:  Plaintiff objects

2   to Paragraph 178 itself which states, "After conferring with his attorney off the record

3   about the attorney-client privilege, Lechner testified…" on the basis that this

4   statement is argumentative in violation of this Court's Scheduling Order. Case

5   Scheduling Order (Docket Inst. No. 26 at p. 10).

6    <u>Statement of Genuine Issues of Material Fact Paragraph 179</u>:  Plaintiff objects

7   to Seibel Decl. 28 at p. 10:3-8 which states:

8    With respect to MG Payment made with respect to the Picture's distribution in

9    Spain, the territory was acquired in  what we call a "multi-territory" license

10    agreement.  In this instance, the UK and Spain rights were license by the parent

11    company in the UK who also owns a distribution company in Spain.  This is

12    documented in the license agreement and was recorded by the collection agent

13    Fintage under the parent company's domicile the UK.

14   Plaintiff objects to this statement on the basis of lack of foundation – lack of personal

15   knowledge in that it is not stated where Mr. Seibel's understanding of the MG

16   Payment made with respect to Spain comes from.  To the extent it comes from

17   documents, and in particular the mentioned license agreement, Plaintiff objects on the

18   grounds of hearsay.  Fed. R. Evid. 802.  The license agreement speaks for itself but

19   the Defendants have chosen not to include it in their moving papers.

20    <u>Statement of Genuine Issue of Fact No. 181</u>:  Objection to Seibel Decl. at ¶48

21   which states "The companies have each made intercompany loans to each other, but

22   the loans are due on a certain date with interest" on the grounds of lack of foundation

23   and lack of personal knowledge as Mr. Seibel does not state how he has come to his

24   knowledge about the status of each company's loans. Fed. R. Evid. 602.  Athough

25   Mr. Seibel does give a brief one sentence overview of his general duties at Distibution

26   at ¶5 (which, on their face, do not encompass overseeing company loans),  nowhere in

27   his entire declaration does Mr. Seibel offer an even cursory explanation of his duties,

28

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

1  if any, as managing member of International.  *See generally*, Seibel Decl. To the

2  extent such loans were executed as documents, Plaintiff further objects to this same

3  statement on the grounds of hearsay.  Fed. R. Evid. 802.  The alleged written

4  agreement speaks for itself – but it has not been submitted with Defendants' Motion.

5        Statement of Genuine Issue of Fact No. 189:  Objection to Seibel Decl.

6  ¶53 which states that "International has several employees that are not employees of

7  Distribution.  For instance, D.J. Guggenheim, Gary Preisler, Orrin Haper, and

8  Kimberly Fox are not employees for Distribution but are employees of International"

9  on the grounds of lack of foundation – lack of personal knowledge as the statement

10 fails to provide the basis for Mr. Seibel's assertions.  Fed. R. Evid. 602.  Nowhere in

11 his entire declaration does Mr. Seibel offer an even cursory explanation of his duties,

12 if any, as managing member of International which would provide for a basis of how

13 he knows who International's employees are.  *See generally*, Seibel Decl. Plaintiff

14 further objects that whether the stated individuals are employees only of International

15 and not Distribution is a legal conclusion, and as such is impressible lay testimony.

16 Fed. R. Evid. 802.  As such, the appropriate place for such a statement would be under

17 the Conclusions of Law Section. Finally, to the extent Mr. Seibel's understanding is

18 based upon documents, Plaintiff objects on the basis of hearsay. Fed. R. Evid. 802.

20 DATED:  September 26, 2011        FAYER GIPSON LLP
                                    GREGORY A. FAYER
21                                  MINH Z. KUO

23                                  By_____/s/_____
24                                      GREGORY A. FAYER
                                    Attorneys for Plaintiff Cinezeta

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE**

FAYER GIPSON LLP